STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-233

BARBARA SHELTON, ET VIR

VERSUS

JAMES G. HAIR, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 205,158
HONORABLE B. C. BENNETT, JR., PRO TEMPORE
& HONORABLE PATRICIA KOCH, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

**AFFIRMED AS AMENDED.**

Thibodeaux, Chief Judge, concurs in part and dissents in part and assigns written reasons.

Frank M. Ferrell
631 Milam, Suite 100
Shreveport, LA 71101
Counsel for Plaintiffs-First Appellants:
    Barbara Shelton, et vir

Victor H. Sooter
P. O. Box 1671
Alexandria, LA 71309
Counsel for Defendants-Second Appellants:
    Dr. James G. Hair and the Doctors Company

**PAINTER, Judge.**

In this medical malpractice action, Plaintiff, Barbara Shelton, and her husband, David Shelton, sued Dr. C. Babson Fresh, a surgeon, and Dr. James G. Hair, a pathologist, following brain surgery. Plaintiffs alleged that Mrs. Shelton suffered severe deficits from having a portion of her brain removed unnecessarily after Dr. Fresh performed the surgery based on a "presumptive" diagnosis of astrocytoma from Dr. Hair. Dr. Fresh was voluntarily dismissed from the lawsuit by Plaintiffs. Following a bench trial, the trial judge found Dr. Hair to be ten percent at fault and awarded damages to Plaintiffs. Plaintiffs and Defendant appealed.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 1998, Mrs. Shelton, who was fifty-seven years old at the time, presented to Dr. L. R. Collier, a general practitioner and surgeon whom Mrs. Shelton described as her family doctor, in Winnfield, Louisiana with complaints of right-sided weakness in her leg and arm. She also had a history of hypertension controlled by medication. On that day, Dr. Collier noted her blood pressure to be high. Mrs. Shelton was hospitalized and Dr. Collier ordered several tests, including a CT scan of the brain which showed a lesion in the left fronto-parietal area. Based on this CT, Dr. Collier requested a consult with Dr. C. Babson Fresh, a neurosurgeon in Alexandria, Louisiana. Mrs. Shelton was transferred to Rapides Regional Medical Center on March 4, 1998. A repeat CT scan of the brain was performed on that date and interpreted as showing a fronto-parietal cortical lesion approximately 1.5 to 2.0 cm. in diameter with a significant amount of edema surrounding the lesion. An MRI confirmed the location of the lesion just above the atrial region of the left lateral ventricle. The MRI was interpreted by Dr. Paul Larson as showing no mass effect and some associated adjacent increased signal in white matter due to gliosis, which

1

is a benign condition. Plaintiffs allege that the information from Dr. Larson's report was not made available to them.

Mrs. Shelton testified at trial that Dr. Fresh thought it was a tumor that needed to be removed immediately. When she requested a second opinion, Mrs. Shelton testified that Dr. Fresh told her that there wasn't really time for a second opinion and that the condition needed to be taken care of immediately. That was Wednesday, and surgery was scheduled for Friday morning.

On March 6, 1998, Dr. Fresh performed a stereotaxic guided craniotomy and resection of tumor. During the procedure, a biopsy was obtained and the material was sent to Dr. Hair for analysis before completion of the surgery. Dr. Hair prepared the specimen for frozen section examination and had only several minutes to make a diagnosis. Dr. Hair's impression was "probable high grade astrocytoma." This information was conveyed to Dr. Fresh, and based thereon, Dr. Fresh proceeded to full invasive surgery to remove the abnormal tissue. Dr. Hair testified that he told Dr. Fresh that he did not have sufficient material with which to make a definitive diagnosis, but that based upon what he saw, it was probably a high grade astrocytoma, which would indicate a malignancy. Dr. Hair further testified that additional aspirated material was provided to him but was of no use because it was not part of the tumor.

A Permanent section of the biopsied material was reviewed by Dr. Seldon J. Deshotel, who diagnosed low grade astrocytoma. The tissue specimen was forwarded to Dr. Peter C. Burger, a neuropathologist at the Johns Hopkins University Medical Center in Baltimore, Maryland. Dr. Burger performed some additional testing using staining techniques that are not available intraoperatively and made the diagnosis that the tissue was abnormal but not malignant.

2

Mrs. Shelton alleged that the surgery was unnecessary and rendered her unable to walk without the use of a cane and has drastically curtailed her activities of daily life.

The matter was submitted to a medical review panel composed of Drs. David A. Cavanaugh, Travis Harrison, and Paul McGarry. The panel found that neither Dr. Fresh nor Dr. Hair breached the applicable standard of care. Drs. Harrison and McGarry testified at trial by deposition.

A bench trial was held on March 22, 2005 before the Honorable B. Dexter Ryland, who took the matter under advisement. However, Judge Ryland died on June 28, 2005, before issuing any written reasons for judgment. Judge B. C. Bennet was appointed to take over Judge Ryland's docket. In accordance with La.R.S. 13:4209, the parties agreed that Judge Bennett would review the transcript of the trial testimony and all exhibits accepted into evidence. Judge Bennett rendered written reasons for judgment on September 19, 2005, wherein he found for Plaintiffs. Judge Bennett awarded the following damages: (1) $250,000.00 in general damages to Barbara Shelton; (2) $81,175.80 in medical specials to Barbara Shelton; (3) $52,920.00.00 in past lost wages to Barbara Shelton; and (4) $100,000.00 to David Shelton for his loss of consortium. Thus, total damages were $484,095.80. However, Judge Bennett found Defendant, Dr. Hair, to be ten percent (10%) at fault,[1] and in a October 28, 2005 judgment in accordance with his written reasons, reduced Plaintiffs' recovery to $48,095.80.

Defendants, Dr. Hair and his insurer, The Doctor's Company, filed a motion for new trial which was heard by Judge Patricia Koch on December 22, 2005. By

---

[1]Judge Bennett assessed the other ninety percent (90%) of fault to Dr. Fresh, who had been voluntarily released by Plaintiffs without a settlement. Dr. Fresh had filed a motion for summary judgment prior to his dismissal but that motion was not heard by the trial court.

judgment dated January 3, 2006, Judge Koch denied the motion for new trial. Defendants suspensively appealed, asserting that the trial court erred in the following particulars: (1) in failing to grant a motion in limine seeking to preclude the testimony of Plaintiffs' expert, Malcolm Goodwin, as to the applicable standard of care; (2) in finding a breach of the applicable standard of care by Dr. Hair and in the subsequent allocation of ten percent (10%) of fault to him; (3) in holding that Plaintiffs had met their burden of proof regarding the amount of damages purportedly caused as a result of the alleged breach of the standard of care; and (4) in denying the motion for new trial. Plaintiffs also appealed, asserting that the trial court erred in its allocation of fault and seeking an increase in the award of general damages.

We first note that there is an error in calculation of the judgment. Ten percent (10%) of $484,095.80 is $48,409.58 rather than $48,095.80. Accordingly, we amend the judgment to provide that the amount recoverable by Plaintiffs is $48,409.58. In all other respects, for the reasons that follow, we affirm the judgment of the trial court.

**DISCUSSION**

*Motion in Limine*

Defendant complains that the trial court failed to preclude Plaintiffs' expert, Dr. Malcolm Goodwin, from testifying as to the standard of care for pathologists. The thrust of Defendant's argument is that Dr. Goodwin is a "hired gun" who has not performed a frozen section diagnosis of brain tissue in over thirty years. Defendant also points out that Dr. Goodwin has never been accepted by any court as an expert witness in a case such as this where the focus of the case was the pathologic examination of a frozen section of brain tissue. Thus, Defendant alleges that Dr. Goodwin's testimony was neither relevant nor reliable.

4

The trial court denied Defendant's motion in limine and allowed Dr. Goodwin's testimony by deposition to be admitted into evidence and considered it in making its ruling. In written reasons for judgment, Judge Bennett found that Dr. Goodwin was qualified as a pathologist and that his testimony had some probative value. Judge Bennett did note that he had not practiced in many years. He apparently weighed Dr. Goodwin's testimony that the samples were inadequate against the testimony of the medical review panelists.

Defendant cites *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993) for the proposition that expert scientific testimony must rise to a threshold level of reliability in order to be admissible under La.Code Evid. art. 702. Louisiana Code of Evidence article 702 reads: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." We find, as did the trial court, that Dr. Goodwin's testimony was reliable, probative, and aided the trier of fact in reaching its decision. Furthermore, the trial court has great discretion in its consideration of motions in limine, which provide litigants with a procedural vehicle to have evidentiary matters decided prior to trial. *Scott v. Dauterive Hosp. Corp.*, 02-1364 (La. App. 3 Cir. 04/23/03), 851 So.2d 1152, *writ denied*, 03-2005 (La. 10/31/03), 857 So.2d 487. This court has also recognized that "the trial court is allowed much discretion in determining whether to allow a witness to testify as an expert under La. Code Evid. Art. 702" and that "[i]ts judgment will remain undisturbed unless clearly erroneous." *Hall v. Brookshire Bros., Ltd.*, 01-1506, p. 19 (La. App. 3 Cir. 8/21/02), 831 So.2d 1010, 1024, *writs granted*, 02-2404, 02-2421 (La. 11/27/02), 831 So.2d 285, and *decision affirmed*, 02-

5

2404 (La. 6/27/03), 848 So.2d 559. Accordingly, we find that the trial court did not err in its implicit finding that Dr. Goodwin met the *Daubert* criteria for admissibility of his expert testimony and that there was no abuse of discretion in the trial court's refusal to grant Defendant's motion in limine.

*Allocation of Fault*

Defendant alleges that no fault should have been allocated to him since it was error for the trial court to find that he breached the standard of care. Plaintiffs, on the other hand, argue that the trial court erred in assessing only ten percent (10%) of fault to Dr. Hair.

In *LeBlanc v. St. Paul Fire & Marine Ins. Co.*, 99-2008, p. 7 (La. App. 3 Cir. 9/6/00), 772 So.2d 133, 138, *writ denied*, 00-2800 (La. 11/27/00), 775 So.2d 1070, this court noted:

> Plaintiffs in medical malpractice actions must establish their claim by a preponderance of the evidence. A plaintiff must prove that 1) a doctor's treatment fell below the ordinary standard of care required of physicians in his or her medical specialty and 2) a causal relationship exists between the alleged negligent treatment and the injury sustained. *Martin* [*v. East Jefferson General Hosp.*], 582 So.2d 1272 (La.1991). We recognize, however, that physicians are not held to a standard of absolute precision, but the conduct must not fall below the care ordinarily expected of a physician practicing his or her medical specialty. *Broadway v. St. Paul Ins., Co.*, 582 So.2d 1368 (La.App. 2 Cir.1991).

We cannot say that the trial court committed manifest error in finding that Dr. Hair fell below the ordinary standard of care required of physicians practicing within his medical specialty in failing to adequately caution and impress upon Dr. Fresh that there was a need for more time and more material.

Furthermore, the apportionment of fault by the trier of fact is a factual determination subject to the manifest error standard of review. *Hall*, 831 So.2d 1010 (citing *Clement v. Frey*, 95-1119 (La. 1/16/96), 666 So.2d 607). *Watson v. State*

6

*Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985) sets forth the following factors for consideration in determining the percentage of fault assessable to all parties:

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

In considering these factors, we note the time constraints upon Dr. Hair and recognize that the trial court's ruling reflects that it found that the greater part of Mrs. Shelton's damages resulted from Dr. Fresh's actions. Thus, we find no error in the trial court's allocation of fault.

*Damages*

Defendant argues that there was no competent medical testimony to support the assertion that Mrs. Shelton's injuries were the result of the resection of brain tissue and that there is no competent support for her claim for medical specials. Plaintiffs argue that the $250,000.00 award for general damages was inadequate.

A plaintiff in a medical malpractice action must prove, by a preponderance of the evidence, "[t]hat as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred." La.R.S. 9:2794(A)(3). Causation is a question of fact, and we will not disturb the trial court's determinations in that respect absent manifest error. *Martin*, 582 So.2d at 1276.

We note that when Mrs. Shelton first presented to her family doctor, she was complaining of right-sided weakness and that her blood pressure was elevated. Following the surgery, she was unable to walk and, as of the time of trial, had regained partial function in her legs allowing her to walk only with the assistance of

7

a cane. Further, it is undisputed that the tissue removed during the surgery was from the area of the brain that controls motor function. Thus, we find no manifest error in the trial court's determination as to causation.

With regard to the award for lost wages, we do not find that the trier of fact erred. Mr. Shelton testified that his wife was working before the surgery and that he believed that she was trying to work long enough so that she could draw social security. There was no testimony that her job was temporary, that she would only work two to three more quarters, or that she would, in fact, stop working as soon as she could draw social security.

"[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of the discretion by the trier of fact. . . . [T]he adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, (1994). When there is no clear abuse of discretion, it is inappropriate for this court to refer to other awards in similar cases. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976). In light of these standards, we find that the trial court's award of general damages in the amount of $250,000.00 was neither excessive nor inadequate.

*Motion for New Trial*

"A new trial shall be granted, upon contradictory motion of any party,. . . [w]hen the verdict or judgment appears clearly contrary to the law and the evidence." La.Code Civ.P. art. 1972(1). Further, pursuant to La.Code Civ.P. art. 1973, a new trial may be granted in any case if there is good ground therefor. We review a trial court's action on a motion for new trial under the abuse of discretion standard.

*Williams v. W. O. Moss Regional Med. Ctr.*, 05-22 (La.App. 3 Cir. 6/1/05), 903 So.2d 1150.

Defendant based his arguments in the motion for new trial on the same grounds that he now asserts on appeal, namely that Dr. Goodwin should not have been allowed to testify, that Dr. Hair did not breach the applicable standard of care, and that Mrs. Shelton did not meet the burden of proving that her damages were caused by Dr. Hair's alleged malpractice. As we have already found Defendant's other assignments of error to be without merit, we find no abuse of discretion in the trial court's denial of the motion for new trial.

**DECREE**

We affirm both the allocation of fault and the total amount of damages awarded by the trial court; however, we amend the judgment of the trial court to reflect the proper calculation of ten percent (10%) of the total judgment recoverable by Plaintiffs. Accordingly, the amount recoverable by Plaintiffs for ten percent (10%) of the total damages of $484,095.80 is $48,409.58. The judgment of the trial court is thereby affirmed as amended. Costs of this appeal are assessed to Defendants.

**AFFIRMED AS AMENDED.**

**BARBARA SHELTON, ET VIR**

**VERSUS**

**JAMES G. HAIR, ET AL.**

THIBODEAUX, Chief Judge, concurring in part and dissenting in part.

I concur with the majority's view on the apportionment of fault to the Defendant. However, I disagree with the general damage award of $250,000.00. The record reflects that the Plaintiff's motor functions were permanently impaired and she can no longer walk without the assistance of a cane. Further, she can no longer perform the activities to which she was accustomed. In my view, the award of $250,000.00 was an abuse of discretion. Consistent with *Coco v. Winston Industries*, 341 So.2d 332 (La.1976), I would increase the award to the lowest amount appropriate under the circumstances, $450,000.00.