NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1161


DORIS SAUNIER, ET AL.

VERSUS

LACYE NOLAN, ET AL.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2001-4912
HONORABLE R. RICHARD BRYANT JR., DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


AFFIRMED.

Frederick L. Cappel
Raggio, Cappel, Chozen, & Berniard
1011 Lakeshore Dr., Ste. 500
Post Office Box 820
Lake Charles, LA 70602
(337) 436-9481
Counsel for Defendant-Appellee:
State of Louisiana, through the Department of Transportation and Development

**James David Cain Jr.**
**Loftin, Cain, Gabb & LeBlanc, LLC**
**113 South Ryan Street**
**Lake Charles, LA 70601**
**(337) 310-4300**
**Counsel for Plaintiffs-Appellants:**
**Deandre Peoples**
**Doris Saunier**
**John R. Saunier**
**Jolene Atkinson**

**PICKETT, Judge.**

The plaintiffs-appellants, Doris Saunier, Deandre Peoples, John P. Saunier, and Jolene Saunier Atkinson, appeal a judgment of the trial court pursuant to a jury verdict finding that the State of Louisiana was not negligent in the death of John Saunier.

## STATEMENT OF THE CASE

On June 4, 2001, Lacye Nolan was driving her Dodge truck northbound across the Ellender Bridge over the Intracoastal Waterway. The Ellender Bridge is a drawbridge, and the portion of the driving surface of the bridge that raises to allow boat traffic to pass is constructed of steel grating. The section of the bridge adjacent to the metal grating on the north is concrete. On the morning of June 4, 2001, Ms. Nolan's vehicle drifted across the centerline of the bridge on the concrete section north of the metal grating. Her vehicle struck a vehicle in the southbound lane which was being driven by John Saunier. Mr. Saunier's vehicle struck the railing on the southbound lane of the bridge, then careened across the southbound lane and came to rest in the northbound lane at the top of the bridge. Mr. Saunier died as a result of injuries sustained in the wreck.

On September 28, 2001, Doris Saunier, Mr. Saunier's surviving spouse, and Deandre Peoples, John P. Saunier, and Jolene Saunier Atkinson, Mr. Saunier's children, filed a petition for survival damages and wrongful death. The plaintiffs named Lacye Nolan, Mutual Service Casualty, her insurer, and the State of Louisiana, through the Department of Transportation and Development (DOTD), as defendants. Prior to trial, the plaintiffs settled their claims against Lacye Nolan and Mutual Service Casualty. The matter proceeded to trial against DOTD on March 26-29,

1

2007. The jury returned a verdict finding no fault on the part of DOTD in causing the accident. The trial court signed a judgment in conformity with the jury's verdict on April 13, 2007. The plaintiffs now appeal.

## ASSIGNMENTS OF ERROR

The plaintiffs-appellants assert two assignments of error:

1. The jury's findings of fact were "manifestly erroneous." The record reflects that there is no reasonable factual basis for the findings of the Trial Court. The record establishes that the findings of the trial court regarding the liability of defendant, the State of Louisiana, through the Department of Transportation and Development, is "clearly wrong" based upon the following particulars:

   A. Lacye Nolan, the only eyewitness of the actual accident occurring and of the hydroplaning event caused by standing water on the Ellender Bridge, was uncontradicted.

   B. Both the plaintiff and defense experts testified that the bridge exit slab had standing water on it at the time of the accident.

   C. Plaintiff's Highway Design Expert conducted a topographical survey that was uncontradicted. In fact, it was relied upon by the defense expert, and established that the location where the witness testified standing water and hydroplaning occurred, held water up to just over one-half an inch in depth and that this water could not drain away from the driving surface portion of the bridge deck where this accident occurred.

   D. The testimony of the only eyewitness, Lacye Nolan, whose vehicle hydroplaned as she exited the steel grating on top of the Ellender Bridge and onto the exit slab was corroborated by evidence of three prior similar accidents at the same location on the Ellender Bridge.

   E. The American Association of State Highway and Transportation Officials (AASHTO) Manual states that skidding crashes are a major concern in highway safety. It is not sufficient to attribute skidding crashes merely to "driver error," this information was introduced into evidence at trial.

2. The trial court erred as a matter of law by not excluding the testimony of DOTD's experts, Marshall Lyles and Jeff Milburn. Plaintiffs objected to their testimony via Motions in Limine and prior to testimony during trial.

2

# DISCUSSION

The supreme court discussed the standard for reviewing factual findings of a trial court in *Rabalais v. Nash*, 06-999, pp. 4-5 (La. 3/9/07), 952 So.2d 653, 657:

> It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. *Blair v. Tynes*, 621 So.2d 591, 601 (La.1993); *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). To reverse a fact-finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. *Mart v. Hill*, 505 So.2d 1120 (La.1987). Where the jury's findings are reasonable, in light of the record viewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the trial court's ruling is manifestly erroneous, or clearly wrong. *Blair, supra*.
>
> The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. *See Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880 (La.1993); *Cosse v. Allen-Bradley Co.*, 601 So.2d 1349, 1351 (La.1992); *Housley v. Cerise*, 579 So.2d 973 (La.1991); *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990). Where there are two permissible views of the evidence, the fact-finder's choice cannot be manifestly erroneous or clearly wrong. *Stobart, supra*.
>
> Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact-finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, where conflict exists in the testimony. *Rosell, supra*; *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact-finder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell, supra*.

The jury's finding that DOTD's fault was not a cause of the accident herein is a question of fact which can only be overturned if we find manifest error. *Toston v. Pardon*, 03-1747 (La. 4/23/04), 874 So.2d 791.

Ms. Nolan gave a deposition in this case on March 20, 2002, portions of which were read to the jury. Ms. Nolan passed away prior to the trial from unrelated causes. Ms. Nolan testified she was driving along fine on the grating, but when she hit the end of the grating she never heard a bump, and she saw water fly up from her tires. She lost control of her vehicle, and steering would not respond. She did not slam on the brakes. She thought that perhaps she skidded on the metal joint between the grating and the pavement (which is maximum eight inches wide).

She stated that she did not remember talking to Louisiana State Trooper Joey Adaway at the hospital after the accident. When she told him that she blinked her eyes, she said that she must have meant "in the blink of an eye," in the sense that it happened so quickly.

Duane Evans, the plaintiff's expert, did a topographical map of the bridge and found that in the first seven feet after the grating, water could pool about ½ an inch deep in the area where the left side tires would normally travel. His opinion of the accident was that Lacye began to slip on the grating, she rotated slightly, the effect was magnified when she hit the pavement, and she drifted into the center lane. He also testified that AASHTO states that skidding should not be caused solely by driver error. He also reviewed three previous accident reports and stated that they all appeared to happen in a similar way.

Trooper Adaway said that when he arrived about thirty minutes after the accident, there was no water pooling on the bridge, though the road surface was wet. He attributed the accident to Lacye's inattention.

Marshall Lyles, an accident reconstruction expert who testified for the defense, was of the opinion Lacye just drifted over, but did not skid or hydroplane. He based

4

this on the angle of the collision and the fact that her vehicle did not rotate. He believed she did not have enough time between leaving the grating and hitting the other vehicle to hydroplane. He admitted that he did not take into account the possibility of hydroplaning because he determined that the area where she claims to have hydroplaned was not long enough or deep enough to cause her vehicle to hydroplane as she testified.

Jeffrey Milburn, a defense highway engineering expert called by DOTD, testified that the sagging in the bridge would not hold as much water as Mr. Evans suggested. He said that the sag in the pavement would only hold about a quarter of an inch, and at most one-third of an inch, of water, which he estimated using the survey prepared for Mr. Evans and his own visit to the site. He also said that there was not enough standing water in the road, or enough time (i.e., space between the end of the grating and the collision) for hydroplaning to occur. As to the dynamics of the accident, Mr. Milburn testified that the lack of rotation of Ms. Nolan's vehicle supports a conclusion that she did not lose control of her vehicle. Finally, Mr. Milburn testified that the three accidents which had previously occurred on the Ellender Bridge were not substantially similar to those which occurred in this case.

We find that the jury had enough evidence to support its finding that DOTD was not negligent in this accident. Two experts testified that water could accumulate in the path of the left side tires on the exit slab. While Ms. Nolan testified that water flew up when she left the grating, Trooper Adaway, who arrived thirty minutes after the accident, did not see any water standing on the bridge. Furthermore, Mr. Milburn explained why he believed that even if there was standing water on the bridge, it was

5

not sufficient to cause Ms. Nolan's vehicle to hydroplane. We find no manifest error in the jury's findings.

In their second assignment of error, the plaintiffs argues that the testimony of DOTD's experts is unreliable and should have been excluded. They premise their argument on the fact that neither Mr. Lyles nor Mr. Milburn gave sufficient weight to Ms. Nolan's testimony. The plaintiffs first made these arguments to the trial court in motions in limine.

> [T]he trial court has great discretion in its consideration of motions *in limine*, which provide litigants with a procedural vehicle to have evidentiary matters decided prior to trial. *Scott v. Dauterive Hosp. Corp.*, 02-1364 (La.App. 3 Cir. 04/23/03), 851 So.2d 1152, *writ denied*, 03-2005 (La.10/31/03), 857 So.2d 487. This court has also recognized that "the trial court is allowed much discretion in determining whether to allow a witness to testify as an expert under La.Code Evid. Art. 702" and that "[i]ts judgment will remain undisturbed unless clearly erroneous." *Hall v. Brookshire Bros., Ltd.*, 01-1506, p. 19 (La.App. 3 Cir. 8/21/02), 831 So.2d 1010, 1024, *writs granted*, 02-2404, 02-2421 (La.11/27/02), 831 So.2d 285, and *decision affirmed*, 02-2404 (La.6/27/03), 848 So.2d 559.

*Shelton v. Hair*, 06-233, pp. 5-6 (La.App. 3 Cir. 9/27/06), 939 So.2d 685, 689(second alteration in original). "As a general rule, the factual basis of an expert's opinion goes to the credibility of the testimony, not its admissibility, and it is up to the opposing party to examine the factual basis of the opinion in cross-examination." *Rowe v. State Farm Mutual Automobile Insurance Co.*, 95-669, p. 17 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, 728, *writ denied*, 96-824 (La. 5/17/96), 673 So.2d 611. DOTD's experts testified that they were aware of Ms. Nolan's testimony, but the evidence at the scene did not support her version of the accident. The plaintiffs were given an opportunity to address the basis for their testimony during cross examination. We find that the trial court did not clearly err in allowing the testimony of Mr. Lyles and Mr. Milburn.

6

In doing so, we find that this situation is distinguishable from two cases cited by the plaintiffs in their brief to this court. In *Hattori v. Peairs*, 95-144 (La.App. 1 Cir. 10/6/95), 662 So.2d 509, *writ denied*, 95-2677 (La. 1/12/96), 666 So.2d 322, the trial court determined that the testimony of an expert witness on the use of deadly force was not admissible. The plaintiff objected, arguing that the expert's finding was based only on the testimony of the defendant. The plaintiff also suggested that such a field of expertise did not exist. The trial court did not allow the testimony, as it found that the testimony would not be helpful in its determination of whether the force used by the defendant was reasonable. The first circuit affirmed this finding. In *Hattori*, the expert only relied on the testimony of the defendant, and his field of expertise was questionable. Here, there is not a question about the field of expertise of DOTD's experts, and they clearly acknowledged Ms. Nolan's testimony, though they did not give her testimony as much weight as the plaintiff's expert, Mr. Evans.

The second case relied upon by the plaintiffs is also distinguishable. In *Rowe*, 670 So.2d 718, this court found that the trial court erred by not allowing the plaintiff to discover and present evidence of the defense expert's bias. We further found that if the expert's testimony was found to be biased, it would be unreliable and inadmissible. In this case, there was no evidence of bias on the part of the experts.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellants, Doris Saunier, Deandre Peoples, John P. Saunier, and Jolene Saunier Atkinson.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.

7