JUDE G. GRAVOIS, Judge.
[sPreston Stead, a seventeen-year-old high school student, drove while legally intoxicated and died after he crashed his SUV in a single-vehicle accident. His parents, plaintiffs Douglas Stead and Charlotte Bremermann, sued defendant Susan Swanner, the mother of Preston’s friend, Chet Vaughn, at whose home Preston and other teens drank alcoholic beverages that evening. Plaintiffs alleged that Ms. Swan-ner provided inadequate supervision to the teens that evening by failing to prevent Preston from drinking, despite the fact that Ms. Swanner did not purchase or otherwise furnish alcohol to the teens. Plaintiffs alleged that Ms. Swanner breached her duty to the teens because she knew or should have known that they were drinking on her premises based on her knowledge of their past conduct in drinking at her and other teens’ homes. Following a two-day bench trial, the trial court found that under the particular facts of this case, Ms. Swanner owed no legal or statutory duty to Preston or plaintiffs, and accordingly dismissed plaintiffs’ suit with prejudice.
[4On appeal, plaintiffs argue that the trial court committed legal error in conducting its duty-risk analysis, and thus this Court should conduct a de novo review of the trial court’s legal and factual conclusions, rather than applying the manifest error standard. Plaintiffs also argue that the trial court erred in its rulings on their pre-trial motion in limine. Finally, plaintiffs argue that the trial court erred in failing to award them damages on their survival and wrongful death claims.
Upon review, we find that the trial court did not commit legal error in its duty— risk analysis, and thus our appellate review of this matter will be conducted under the manifest error standard. Using this standard, we find no manifest error in the trial court’s factual findings that Ms. Swanner had no actual or constructive knowledge that the teens were drinking alcoholic beverages that particular evening, and thus find no error in the trial court’s conclusion that she owed no legal duty to Preston or plaintiffs under the particular facts of this case. We also find no error in the trial court’s rulings on plaintiffs’ motion in limine. Finally, because the trial court did not err in finding that Ms. Swanner owed no legal duty to Preston or plaintiffs, no survival and wrongful death damages are owed to plaintiffs.

*113
FACTS AND PROCEDURAL HISTORY

On the night of January 27, 2007, Preston Stead, a high school student,[1] was driving his 1999 Tahoe SUV eastbound on Vintage Drive in Kenner, Louisiana, when he failed to negotiate a right turn from Vintage Drive onto Power Boulevard and lost control of his vehicle.[2] Testimony revealed that immediately prior to the accident, Preston had sped up and passed another vehicle driven by a friend, Bobby Korrapati. The road was wet and Preston’s SUV flipped over several times after striking a curb. Preston was not wearing a seat belt and was ejected from his 1 svehicle. He died at the scene. His passenger, Maryelaire Manard,[3] was wearing a seatbelt and escaped from the accident with only minor injuries.
Earlier that evening, Preston and a group of friends had converged at the home of another friend, Chester “Chet” Vaughn, who lived with his mother, Ms. Swanner, in Chateau Estates in Kenner. Present at the Swanner home that evening were Chet Vaughn (age 16), Srinivas “Bobby” Korrapati (age 16), Stephen Gieger (age 16), Donald Muller, Jr. (age 17), Preston Stead (age 17), Maryelaire Manard (age 16), Doug Collins (age 15), Taylor Michaels (age 16), and Sarahbeth Eumont (age 16). Korrapati, Gieger, and Manard testified at trial. The gathering took place in an apartment attached to Ms. Swanner’s house, accessible by a separate door and through an adjacent garage. Korrapati brought at least two cases of beer and a couple of gallons of daiquiris to the Swan-ner home that evening, admittedly purchased by him with the teens’ pooled money. The testimony was uncontradicted that Ms. Swanner neither purchased alcoholic beverages for the teens nor otherwise furnished it to the teens that evening.
Previously, Chet Vaughn had been “grounded” by Ms. Swanner for approximately six weeks because she had found him drinking alcohol at another party. The night of this accident was the first time since then that Chet was allowed to have friends over at the Swanner home. Some of Chet’s friends present that evening had also been present at the earlier drinking party at the other house.
The record shows that Preston arrived first, around 6:00 p.m., with gumbo. Gieger and Collins arrived between 7:00 and 7:30 p.m. Korrapati, Muller, Eumont, Ma-nard, and Michaels arrived around 9:00 p.m. The teens hung out in the garage and in the apartment that was next to the garage.[4] Ms. Swanner stayed mostly in the main part of the house that evening. She testified that she checked on |Bthe teens several times during the evening, entering the garage and an adjacent laundry room to do laundry, and also around 9:15 p.m. to ask if they wanted pizza or something else to eat. She testified that some of her visits to the laundry room were also under the pretext of checking on the teens. She ordered pizza for the teens and brought it to the apartment around 9:45 p.m. She specifically testified that she did not see any evidence of alcohol or alcohol consumption by the teens that evening. Her delivery of the pizza appears to have been the last time she entered the *114 apartment or garage. A photograph taken that evening that was entered into evidence showed some beer cans stacked on a table in the garage. No testimony definitively established, however, exactly when during the evening this photograph had been taken.
Korrapati, Manard, and Gieger all testified that all of the teens actively concealed the presence of alcohol at the Swanner home that evening and evidence of their drinking from Ms. Swanner. They testified that they poured the beer into cups instead of drinking it straight from the cans. They said that they hid the beer in an ice chest instead of keeping it in a refrigerator in the apartment. They also testified that Ms. Swanner did not see the beer cans on the table in the garage. They took all of the empty beer cans and other evidence of their alcohol consumption with them when they left the Swanner home that evening.
Around 11:00 p.m. that evening, the teens decided to go to Sarahbeth Eumont’s house. Right before they left, Preston went into the house and spoke briefly with Ms. Swanner-, obtaining a cough drop from her for one of the girls. The teens then left in several vehicles. After stopping on the way at a gas station to purchase chewing tobacco for one of the boys, the vehicles proceeded down Vintage Drive towards Power Boulevard, at which time Preston began to “race” Korrapati’s vehicle and proceeded to pass him. Preston then lost control of his [ .¡vehicle when he arrived at Power Boulevard and hit a curb, causing his vehicle to flip over several times. Manard was able to crawl out of the vehicle. After the crash, the other teens stopped. One of them remained behind with Preston, while the others called 9-1-1 and went to the nearby home of one of the teens and alerted the parents.
Preston’s blood alcohol concentration (“BAC”) at the time of his autopsy was determined to be .119 grams percent. Dr. Gerald Liuzza, plaintiffs’ expert forensic pathologist as to the effects of alcohol on the body, testified that the alcohol level in the vitreous fluid taken from Preston’s eye measured .142 grams percent, which meant that Preston’s BAC had been at least that high at some point earlier that evening. He also testified that Preston’s alcohol consumption was a significant contributing factor to the accident.
Douglas Stead and Charlotte Bremer-mann, Preston’s parents, filed this survival and wrongful death action against Ms. Swanner and her insurers.[5] The suit alleged that Ms. Swanner hosted the party at which alcoholic beverages were served to and consumed by the minors, including Preston; that Korrapati brought the alcohol to the Swanner home and served it to the other minors with the implied, constructive, or actual knowledge, permission and/or consent of Ms. Swanner; and that Preston consumed enough alcohol at the party to become legally intoxicated, and that as a result thereof, died in the automobile accident. The petition stated the following bases of Ms. Swanner’s liability: (1) allowing alcoholic beverages to be served to Preston at her home; (2) failing to exercise reasonable and proper adult supervision at a party which she hosted for minors to prevent, limit, or otherwise discourage the consumption of alcoholic beverages by the minors; (3) failing to observe the open and obvious consumption of alcoholic beverages by the minors at | sher home; and (4) other acts of non-specified *115 negligence to be shown at the trial of the matter.
In response to the petition, defendants filed an exception of no cause of action, which was denied by the trial court. Defendants later reurged the same exception and arguments that Ms. Swanner had no duty to Preston or plaintiffs. Defendants also filed a motion for summary judgment, alleging that there was no evidence to support plaintiffs’ claims that Ms. Swanner breached a duty to Preston or that such a breach was a cause-in-fact of damages. Additionally, defendants argued that the statutory immunity granted by La. R.S. 9:2798.4 applied to the facts of this case. The trial court granted defendants’ motion for summary judgment, finding that La. R.S. 9:2798.4 granted immunity to Ms. Swanner. A judgment dismissing all of plaintiffs’ claims was entered on January 11, 2010. Plaintiffs appealed.
On December 28, 2010, this Court reversed and remanded the case for trial, finding that the immunity statute was not applicable to this case and that a duty-risk analysis was required.[6]
Prior to trial, plaintiffs filed a motion in limine, seeking rulings that no fault could be assessed to Preston, and that there could be no references in the presence of the jury to any prior instances of Preston’s drinking alcohol. Plaintiffs also argued that no fault could be assessed to plaintiffs, Douglas Stead and Charlotte Bremer-mann, for failure to properly supervise Preston. Finally, they sought a ruling prohibiting any reference to the immunity statute, La. R.S. 9:2798.4.
Ms. Swanner also filed a motion in li-mine, seeking a ruling denying the introduction into evidence of any photographs taken from the Swanner home other than those taken on the night of Preston’s accident, on the basis that they were | irrelevant to the issues before the court, were unreasonably prejudicial, and were not probative.[7] The trial court ruled on the motions that fault could be assessed to Preston and his parents, evidence of Preston’s drinking at locations other than the Swanner residence could be introduced, and photographs of Preston drinking taken at the Swanner residence could be introduced.
A bench trial was held on January 3 and 4, 2012,[8] followed by the filing of post-trial proposed findings of fact and conclusions of law and argument relating thereto by the parties. On May 10, 2012, the trial court issued a final judgment, dismissing plaintiffs’ claims with prejudice. In extensive Reasons for Judgment issued that same day, the trial court found that Ms. Swanner owed no legal or statutory duty to plaintiffs under the factual circumstances of this case. Plaintiffs timely appealed this judgment.[9]

*116
FIRST AND THIRD ASSIGNMENTS OF ERROR

Duty — risk analysis
In their first assignment of error, plaintiffs argue that the trial court committed legal error in conducting its duty — risk analysis. Plaintiffs argue that the trial court’s failure to properly apply the duty— risk analysis requires this Court to now review the record using the de novo standard of review. They argue that had the trial court conducted the proper duty— risk analysis, it would have held Ms. Swan-ner liable. In their third assignment of error, plaintiffs argue that the trial court was manifestly erroneous in finding that Ms. Swanner had no actual or constructive knowledge of the underage drinking at her home on the evening in | mquestion. Due to the fact-intensive nature of the duty— risk analysis, these two assignments of error are closely related and will be discussed together.
When a prejudicial error of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court must, if it can, render judgment on the record by applying the correct law and determining the essential material facts de novo. Chambers v. Vill. of Moreauville, 11-898 (La.1/24/12), 85 So.3d 593, 597. Legal errors are prejudicial when they deprive a party of substantial rights and materially affect the outcome. Id., citing Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731, 735.
Plaintiffs argue that in its analysis, the trial court “ignored the civilian nature of Louisiana tort law,” improperly surveyed common law instead, and concluded that “Ms. Swanner owed no duty under the facts at issue in this matter.” Plaintiffs argue that the statutory basis for Ms. Swanner’s duty is found in La. C.C. arts. 2315[10] and 2316,[11] which make actors responsible for damages caused by their “imprudence.” Plaintiffs argue that given Ms. Swanner’s knowledge of past incidents of underage drinking at her home, plus her knowledge of underage drinking at other teens’ homes, she should have known that the teens were drinking at her home on the evening in question, and taken appropriate steps to prevent the outcome. Plaintiffs also argue, in their third assignment of error, that the trial court’s conclusion of fact that Ms. Swanner did not have actual or constructive knowledge that the teens were consuming alcohol at her home that night is manifestly erroneous.
Defendants counter that the trial court’s findings of fact were not manifestly erroneous, and its conclusion, following an extensive analysis of Louisiana |, statutory law and jurisprudence, that while adults have affirmative duties not to purchase or furnish alcoholic beverages to minors, no affirmative duty exists under existing law for parents to provide “constant and unremitting” supervision of 16- and 17-year-olds to prevent them from engaging in an activity, drinking alcohol, when the adults do not furnish or purchase the alcohol for the teens, and when the adults have no actual or constructive knowledge of the drinking.
*117 A duty-risk analysis for a negligence claim involves five elements which must be proved by the plaintiff, to-wit: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) proof that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). Long v. State ex rel. Dept. of Transp. & Dev., 04-0485 (La.6/29/05), 916 So.2d 87.[12]
The nature of the duty-risk analysis is highly fact-intensive. Roberts v. Benoit, 605 So.2d 1032, 1056 (La.1991). An answer of “no” to any one part of the analysis requires a finding of no liability. Id.
Upon review, we find that the trial court did not commit “legal error” in its duty-risk analysis. We also find no merit to plaintiffs’ assertion that the trial court misapplied Louisiana law, resorting instead to common law. Our review of the trial court’s extensive Reasons for Judgment shows that the trial court properly 112based its ruling on Louisiana law. Accordingly, our review of this matter will be under the manifest error standard.
Our thorough review of the testimony and evidence presented at trial leads us to the conclusion that the trial court’s finding of fact, that Ms. Swanner did not know or should have known that the teens were drinking alcoholic beverages during the evening in question, is not manifestly erroneous. The evidence presented in this case shows that the teens took great pains to hide the alcohol and their consumption thereof from Ms. Swanner. Though a photograph taken that evening shows beer cans stacked on a table in the garage, the teens and Ms. Swanner specifically testified that Ms. Swanner did not see the cans. While Ms. Swanner did check on the teens several times during the evening, no conclusive testimony established the time that this photograph was taken.
The trial judge clearly found all of the testimony supporting Ms. Swanner’s position credible. The trial court’s factual findings and credibility determinations are entitled to great weight and will not be disturbed on appeal absent manifest error. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. Tassin v. Crescent Paint And Varnish Co., 04-607 (La.App. 5 Cir. 11/30/04), 889 So.2d 1043, 1047, writ denied sub nom., Tassin v. Crescent Paint & Varnish Co., 04-3043 (La.2/18/05), 896 So.2d 39, citing Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989).
After an extensive review of Louisiana statutory law and jurisprudence, coupled with a survey of the state of the law on this issue in other states, and mindful of the trial court’s duty to ascertain and interpret the existing law, not to make new law, the trial court found no statutory or jurisprudential authority exists in Louisiana that establishes a duty for an adult to discover or prevent minors from *118 | ^drinking in the absence of the adult’s actual or constructive knowledge of the alcohol consumption. We likewise have found no such statutory or jurisprudential authority in Louisiana. Accordingly, we cannot say that the trial court erred in finding the absence of a duty in this case.
Plaintiffs cite Doe v. Jeansonne, 97-795 (La.App. 3 Cir. 12/10/97), 704 So.2d 1240, to describe the general duty owed by an adult host of 16-year-old attendees of a party to observe risky behavior and take steps to control it. The Doe parents sued the hosts of the teenaged party, alleging that a breach of their duty to adequately supervise the teens resulted in their daughter having sexual intercourse with another party guest in a bathroom and becoming pregnant. The trial court granted summary judgment in favor of the defendants, which the Court of Appeal reversed, finding that reasonable minds could differ as to whether the adult defendants had provided reasonable supervision given their observation of the two young teens, earlier in the evening, “making out” on a bed upstairs and obvious to the adults’ presence, and also whether the girl herself had consented to the sexual encounter. In other words, given what the adults had seen, an issue of material fact remained as to whether their level of supervision (or the lack thereof) made foreseeable the risk that these young teens would later engage in sexual intercourse. Doe is clearly distinguishable from this case because in Doe, the adult chaperones witnessed the very behavior they were alleged to have had a duty to prevent. In this case, Ms. Swanner did not.
In this case, plaintiffs argue that Ms. Swanner’s knowledge of past drinking at her home, coupled with her knowledge of past drinking parties at other homes, should have made her aware that the teens consumed alcoholic beverages on this particular occasion, and that her corresponding supervision of the teens was inadequate. Under the particular facts of this case, we decline to find that Ms. | uSwanner’s supervision of the teens on that particular evening was inadequate. She was present at home the entire evening, the teens were aware of her presence, and she checked on them several times during the evening. Because they took great pains at concealing evidence of their alcohol consumption, Ms. Swanner did not see any evidence of such. She also spoke with Preston right before he left her home and did not detect any evidence of alcohol consumption. Though his BAC was shown to be .119 grams percent at the time of the accident, Ms. Swanner, Korra-pati, Manard, and Gieger all testified that Preston did not appear to be impaired that evening. Admittedly Korrapati and Ma-nard had also consumed alcohol that evening, which Dr. Liuzza testified could possibly have impaired their ability to assess another person’s impairment, but Ms. Swanner and Gieger however had not.
In conclusion, given the evidence presented in this case and its particular factual circumstances, we find no manifest error in the trial court’s finding of fact that Ms. Swanner had no actual or constructive knowledge of Preston’s alcohol consumption that evening. As a result of its “no” answer to that part of the duty-risk analysis, the trial court was compelled to find as it did that Ms. Swanner owed no duty under existing Louisiana law to detect and prevent Preston’s risky behavior. We are careful to state that the existence of no duty in this particular case does not hinge on the fact that Ms. Swanner did not purchase or otherwise furnish the alcohol consumed by the teens. The finding of no duty herein rests upon the factual conclusion in this case that Ms. Swanner had no actual or constructive knowledge that the *119 teens were drinking, and that under the evidence presented in this case, such a conclusion by the trial judge was not manifestly erroneous.

SECOND ASSIGNMENT OF ERROR

Motion in limine
Plaintiffs also argue that the trial court committed legal error in its ruling on their motion in limine, which allowed the admittance of evidence of Preston drinking at other locations and times, and that fault could be assigned to Preston and his parents, Douglas Stead and Charlotte Brem-ermann.
A trial court has great discretion in its consideration of motions in limine, which provide litigants with a procedural vehicle to have evidentiary matters decided prior to trial. Shelton v. Hair, 06-233 (La.App. 3 Cir. 9/27/06), 939 So.2d 685, 689. In this case, the motions in limine were ruled upon pre-trial at a point in the case where a jury trial was contemplated. As such, the trial judge heard detailed arguments regarding the substance of the evidence sought to be admitted and excluded. The matter proceeded, however, as a bench trial.
A trial judge, unlike a jury, is well versed in the rules of evidence, and is, therefore, trained to give the appropriate weight to evidence and to evaluate evidence without bias. Additionally, because of training and experience, a trial judge is in a far better position than a jury to disregard, and not consider, evidence that has been improperly admitted at a trial. Raiford v. U.S. Indus. Ames Lawn & Garden Tools, 05-0815 (La.App. 4 Cir. 5/3/06), 929 So.2d 288, 291-92, writ denied, 06-1615 (La.10/13/06), 939 So.2d 366. Upon review, we find no errors in the trial court’s rulings on plaintiffs’ motion in li-mine, but more importantly, any such errors, if made, would in fact be harmless. The trial court’s analysis concentrated almost exclusively on the facts of Ms. Swan-ner’s actual or constructive knowledge of the teens’ drinking that particular evening and whether the law conferred a heightened legal duty on the social hosts of teenagers, and did not focus on Preston’s past drinking behavior.
lifiWe further note that plaintiffs relied upon Ms. Swanner’s past knowledge of underage drinking both at her home and other homes, a few of which incidents also included Preston, in order to argue for the existence of a heightened duty on her part. Plaintiffs’ position regarding the admission of this evidence, to allow its use to confer liability on Ms. Swanner, but to ask for its exclusion when it could be applied to confer fault upon plaintiffs, is inconsistent.
We further note that the trial judge did not assign any fault to Preston or plaintiffs. Accordingly, there is no erroneous result in the trial court’s ruling on plaintiffs’ motion in limine. '

FOURTH ASSIGNMENT OF ERROR

Survival and wrongful death damages

Plaintiffs also argue that the trial court erred in failing to award survival and wrongful death damages. Given that we have affirmed the trial court’s dismissal of the case against Ms. Swanner, we likewise find no merit to this assignment of error.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED

WICKER, J., concurs with reasons.

. Preston was born on November 17, 1989, which made him 17 years old at the time of the accident.

. According to the record, at the location in question, the eastbound lane Vintage Drive ends and the street continues with a relatively sharp turn to the right onto Power Boulevard.

. Maryclaire's name is spelled various ways throughout the record.

. The house, garage, and apartment were all under one roof line.

. Ms. Swanner and her insurers will sometimes be referred to herein collectively as "defendant" or "defendants."

. Stead v. Swanner, 10-371 (La.App. 5 Cir. 12/28/10), 52 So.3d 1149. The defendants applied for writs with the Louisiana Supreme Court, which were denied. Stead v. Swanner, 11-0335 (La.4/8/11), 61 So.3d 684.

. Ms. Swanner also filed two other motions in limine, seeking rulings regarding evidence that have not been assigned as error in this appeal, and thus are not discussed herein.

. In the Joint Pre-Trial Order filed on December 20, 2011, it was stipulated that no party had posted a jury bond, and therefore the right to a trial by jury had been waived by the parties.

. Defendants filed an "answer” to the appeal, seeking the "preservation” of certain issues for appeal, but assigning no errors in the trial court's judgment and seeking no modification thereof. La. C.C.P. art. 2133 states that an appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. Because defendant’s "answer” seeks *116 none of these things, we will not separately address the issues raised therein.

. La. C.C. art. 2315(A) provides: Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

. La. C.C. art. 2316 provides: Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, and his want of skill.

. The duty-risk analysis is also alternatively phrased as: (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred? (2) Did the defendant owe a duty to the plaintiff? (3) Was the duty breached? and (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached? Roberts v. Benoit, 605 So.2d 1032, 1041 (La.1991). The trial court phrased its analysis this way in its Reasons for Judgment.