LILJEBERG, J.
Appellant, Bryant Woods, appeals the trial court's judgment ordering him to pay reimbursements to appellee, Deborah M. Weal, for funds expended to satisfy a mortgage and property taxes, as well as to complete repairs and maintenance on co-owned properties. For reasons set forth more fully below, we affirm the trial court's judgment.
FACTUAL AND PROCEDURAL BACKGROUND
On February 28, 2011, appellee, Deborah M. Weal, filed a Petition for Possession relating to the succession of decedent, Jerry Dale Bryant. Ms. Weal filed the petition in her capacity as the administratrix of the succession of her mother, Florence Agnes Bryant.[1] The petition states Jerry Bryant died intestate in 2000, and Florence Bryant was his surviving spouse and sole heir. The petition further alleges that Florence subsequently died in 2005, and her daughter, Ms. Weal, was appointed as the administratrix of her estate. According to the petition, Florence and Jerry did not have any children during their marriage. It further alleged that Jerry had no other children and never adopted anyone.
Ms. Weal requested that, as the administratrix of Florence's succession, the trial court place her in possession of two pieces of immovable property which Florence and Jerry acquired during their marriage: 1) 644 Turtlecreek Lane in St. Rose, Louisiana ("St. Rose Property") and 2) a home and property located in Kentwood, Louisiana ("Kentwood Property"). On February 28, 2011, the trial court entered a judgment of possession placing Ms. Weal into possession and ownership of the two properties in her capacity as the administratrix of her mother's succession.
*1115 Over six years later on September 29, 2017, appellant, Bryant Woods, filed a Petition to Set Aside Judgment of Possession alleging that he is Jerry's biological son. The petition alleged that Jerry acknowledged his paternity of Mr. Woods in a child support proceeding pending in the same court, "State v. Jerry Bryant," Case No. 44,635. Mr. Woods alleged that Ms. Weal knowingly misrepresented that Jerry had no children. Therefore, Mr. Bryant asked the trial court to set aside the February 28, 2011 Judgment of Possession, and award him full ownership of the Kentwood Property as Ms. Weal had previously sold the St. Rose Property.
The trial court held an evidentiary hearing on Mr. Bryant's petition to set aside the judgment of possession on May 14, 2018. Mr. Woods was represented by counsel and Ms. Weal appeared pro se . Mr. Bryant testified that he was born in 1991 and had a close relationship with his father. He explained that his father paid child support and he stayed with his father during the school year and his mother during the summer until he was eight years old. When he was nine years old, he moved back to his mother's home and his father died a year later. He testified that his father had two stepchildren, Nee-Nee, who is deceased, and Debbie (Ms. Weal). Because Ms. Weal was much older, she had already moved out of the house when Mr. Woods lived with his father. He testified that he spent time with Ms. Weal's children when they visited in the summer.
Ms. Weal testified that she was not aware Mr. Woods was her brother until he filed to set aside the judgment of possession. Ms. Weal explained that she lived out of town when Mr. Woods lived with her parents. When she came home to visit, her mother told her that Mr. Woods was the child of a deceased niece that they were raising. Ms. Weal explained that as a result of this litigation, she learned her father had a relationship with another woman, Gilda Woods, and that Mr. Woods is her half-brother.
Mr. Woods' mother, Gilda Woods, testified that she was aware her son had an interest in the St. Rose and Kentwood Properties, and after Florence Bryant died in 2005, she would check the tax records for the properties to make sure the taxes were current. Neither Gilda nor Mr. Woods provided an explanation as to why Mr. Woods waited over 17 years after Jerry's death to come forward regarding his interests in the estate.[2] Mr. Woods agreed that he and Ms. Weal were the only two people who had a "claim" to his father's property. He testified that he believed both properties were worth over $ 80,000.00, and asked the trial court to award him "around $ 40,000.00" for his half interest.
On the other hand, Ms. Weal sought reimbursements from Mr. Woods for funds she expended to preserve and maintain the properties in their father's succession. She explained that after her father died, her mother did not have any money, requiring Ms. Weal to help her mother pay debts owed on the St. Rose Property. Starting on August 1, 2000, she paid $ 501.00 for six months ($ 3,006.00) to satisfy a mortgage on the St. Rose Property. After her mother passed away in 2005, Ms. Weal learned about another loan owed to Bank One secured by the St. Rose Property. Ms. Weal paid $ 236.19 per month for 36 months ($ 8,502.84) to satisfy this debt. She also testified that she paid taxes on *1116 the St. Rose Property from 2005 to 2008, in the amounts of $ 489.00, $ 512.00 and $ 529.00 ($ 1,530.00), respectively. After 2008, she obtained a homestead exemption.
Ms. Weal also testified that after Hurricane Gustav in 2008, the St. Rose Property required repairs. In 2009, she paid $ 5,000.00 to repair the roof. In 2011, she paid $ 1,200.00 to replace the floors in the kitchen, bathroom and one bedroom. She also experienced a problem with the tub in one of the bathrooms and spent $ 2,500.00 for plumbing repairs.
In 2014, water began to seep into the house on the St. Rose Property and the floors began to crack because the house was shifting. She hired a repairman to help identify the cause of these problems and learned that she needed to elevate the house. She then received an offer to sell the St. Rose Property for $ 50,000.00 from an individual referred to her by the repairman. Because the problems were becoming worse and Ms. Weal could not afford to repair the property, she decided to accept the offer in August 2015. Prior to the sale, the title company handling the closing discovered two other liens were filed against the St. Rose Property in favor of Dixie Mortgage Company and another unnamed company. Ms. Weal stated that after deductions for the liens, she received $ 27,000.00 from the sale of the St. Rose Property.
After she sold the St. Rose Property, Ms. Weal began repairing the Kentwood Property and eventually moved there. She explained that prior to that time, the home sat unoccupied for many years, except for six months when someone agreed to pay $ 100 a month for rent and to help maintain the home. The home required extensive repairs. She paid $ 3,800.00 from her own funds to remove trees, garbage and some old sheds from around the house. She used the money she received from the sale of the St. Rose Property to repair the roof, wiring and plumbing. Ms. Weal testified that she spent $ 10,000.00 to repair the roof in October 2015. She also stated that she spent $ 6,500.00 for wiring, $ 2,800.00 for plumbing and $ 1,200.00 for windows. In addition to testifying regarding these repairs, Ms. Weal presented receipts for tax bills she paid in the amounts of $ 100.00 and $ 108.00, for 2013 and 2015.[3] Ms. Weal testified that she did not retain any other documents regarding the payments she made for the mortgages and taxes for the St. Rose Property, nor for the repairs on both properties, because she was not aware this litigation would arise.
Ms. Weal testified that her parents paid $ 15,500.00 to purchase the property in 1997. The home has two bedrooms, one bathroom, a kitchen and a living room. The back of the home where the utility room is located was damaged by a fire shortly after she moved into the home. The home was not covered by insurance and she claimed that she cannot afford to repair the damage. Ms. Weal also testified that roofing work completed on the home was defective. Therefore, when it rains, water leaks into the walls. Because of the water damage, some of the electrical sockets no longer work. She also has boards over broken windows she cannot afford to repair. Ms. Weal testified that she believed the home was worth approximately $ 23,000.00.
On June 19, 2018, the trial court entered an Amended Judgment of Possession and Judgment on Motion to Set Aside Judgment of Possession. The trial court determined Ms. Weal did not knowingly misstate facts regarding Mr. Wood's paternity in the petition for possession. It also recognized *1117 Mr. Woods as an heir of Jerry Bryant and placed Ms. Weal in possession of both properties as the heir of Florence Bryant.
With respect to the St. Rose Property, the trial court ordered that Ms. Weal and Mr. Woods were each entitled to $ 13,500.00, half of the $ 27,000.00 realized from the sale. The trial court noted that Ms. Weal incurred substantial amounts to pay debts and taxes owed on the property, as well as to complete repairs, totaling $ 21,738.84. The trial court ordered Mr. Woods to reimburse Ms. Weal for half of the funds expended on the St. Rose Property in the amount of $ 10,869.42. The trial court further determined that after deducting these reimbursements, Ms. Weal owed Mr. Woods $ 2,630.58 from the proceeds she realized from the sale of the St. Rose Property.
The trial court also determined that Mr. Woods and Ms. Weal each possess fifty percent (50%) ownership in the Kentwood Property. It ordered Mr. Woods to pay Ms. Weal $ 12,150.00 for half of the $ 24,300.00, she spent to improve, repair and maintain the Kentwood Property. The trial court recognized that Ms. Weal obtained $ 600.00 of rental income and provided a credit of $ 300.00 to Mr. Woods. Therefore, the trial court ordered Mr. Woods to pay Ms. Weal $ 11,850.00 in reimbursements for funds she spent to improve, repair and maintain the Kentwood Property.
On July 27, 2017, Mr. Woods filed a motion and order for devolutive appeal, which the trial court granted on August 2, 2018.
DISCUSSION
On appeal, Mr. Woods raises several assignments of error and issues regarding the trial court's decision to place Ms. Weal into possession of Jerry's succession and the reimbursements awarded to Ms. Weal.
The trial court's factual findings and credibility determinations are entitled to great weight and will not be disturbed on appeal absent manifest error. Stead v. Swanner , 12-727 (La. App. 5 Cir. 5/16/13), 119 So.3d 110, 117, writ denied , 13-1285 (La. 9/20/13), 123 So.3d 174. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings. Id.
With respect to the first issue, he argues the trial court erred by placing Ms. Weal "in possession of property of Mr. Bryant when the record does not show she was in possession of her mother's property." He further questions whether, as administratrix of her mother's estate, Ms. Weal is entitled to be placed in possession of her stepfather's property.
Mr. Woods appears to contest the portion of the trial court's judgment that places "Ms. Weal in possession of one half ownership of the estate of Jerry Dale Bryant (as Florence Agnes Bryant's heir)." We first note that Mr. Woods failed to provide any argument in his brief in support of this assignment of error. Uniform Rules, Courts of Appeal, Rule 2-12.4 requires that "[a]ll assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed." Because Mr. Woods failed to brief this assignment of error, we consider it abandoned. We further note that during his testimony, Mr. Woods agreed that he and Ms. Weal were Jerry's only heirs.
Mr. Woods next argues the trial court erred by requiring him to reimburse Ms. Weal without adequate proof of her expenditures. He also questions whether Ms. Weal is entitled to reimbursement for repairs to maintain homes she lived in and had use of since the decedent's death.
*1118 With respect to the adequacy of the proof provided regarding the reimbursements, Ms. Weal provided receipts for the taxes she paid on the Kentwood Property and also provided detailed testimony regarding the amounts she expended to satisfy the mortgage and taxes on the St. Rose Property. Furthermore, Ms. Weal provided extensive testimony explaining why both properties required significant repairs. The St. Rose Property sustained damage following Hurricane Gustav and the Kentwood Property remained unoccupied for a long time.
It is also understandable that Ms. Weal would not retain receipts for many of the payments she made considering the extensive period of time Mr. Woods waited before filing his petition asking to be recognized as an heir of the decedent. The evidence reveals that during this time, Ms. Weal expended significant funds to maintain the properties at issue. Mr. Woods did not demand an accounting of the succession or present evidence to contest Ms. Weal's testimony regarding the expenditures. Accordingly, we find that Ms. Weal's testimony constituted sufficient evidence to support the reimbursement amounts awarded by the trial court.
Mr. Woods also argues that the trial court should have reduced the amount of the reimbursements because Ms. Weal enjoyed use of both of the properties. It is unclear exactly when Ms. Weal began to live in the St. Rose Property though she did obtain a homestead exemption for the property in 2008. She testified that she was married until her husband died in 2012, and they lived in his house until he became sick at some unspecified time. After he became sick, they moved to the St. Rose Property. Ms. Weal testified that she moved into the Kentwood Property shortly after she sold the St. Rose Property in 2015.
La. C.C. art. 806 provides for reimbursements for necessary expenses and expenses for ordinary maintenance and repairs between co-owners:
A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.
If the co-owner who incurred the expense had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.
First, Louisiana courts have determined that mortgage payments made by a co-owner who occupies a residence is not a "necessary expense" or "expense for ordinary maintenance" subject to reduction for enjoyment of the property. See Cahill v. Kerins , 34,522 (La. App. 3 Cir. 4/4/01), 784 So.2d 685. Therefore, Mr. Woods is not entitled to a reduction of these payments.
We further find that the trial court did not err by declining to reduce the amount of reimbursements due to Ms. Weal's use of the properties. We agree with the trial court that Mr. Woods did not present competent evidence regarding the rental value of the properties that would have allowed the trial court to assess Ms. Weal's "value of enjoyment" of the properties. We further note that the Kentwood Property, where Ms. Weal currently resides has boarded windows, a leaking roof, fire damage and electrical outlets that do not work in parts of the home due to water damage caused by the leaking roof.
Finally, Mr. Woods complains in the argument section of his appellate brief that the "court was clearly wrong in finding that Ms. Weal did not knowingly misstate *1119 the facts regarding Mr. Woods paternity or act in any fraudulent manner." The trial court heard testimony from both parties regarding Ms. Weal's limited interactions with Mr. Woods as a child. Ms. Weal testified that her mother told her Mr. Woods was the son of deceased niece. The trial court evaluated the credibility of the witnesses on this issue and the manifest error demands great deference to the trial court's findings. Mr. Woods failed to present any evidence or argument which would lead this Court to find manifest error on the part of the trial court.
DECREE
Based on the foregoing, we affirm the trial court's June 19, 2018 Amended Judgment of Possession and Judgment on Motion to Set Aside Judgment of Possession.
AFFIRMED

Ms. Weal is the daughter of Jerry and Florence Bryant.

An action for recognition of a right of inheritance and recovery of the whole or a part of a succession is subject to a liberative prescriptive period of thirty years. La. C.C. art. 3502. As explained above, Mr. Woods was 9 years old when his father died. He was at least 25 years old when he filed the motion to set aside the judgment of possession.

It does not appear that the trial court included the payments for these tax bills in the reimbursement award. Ms. Weal did not appeal the amount awarded.